***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. Defendants have not shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act. *Page 2 
2. At such time, an employment relationship existed between Plaintiff-Employee and Defendant-Employer.
3. At such time, AIG Claims, aka American Home Assurance, AIG Domestic Claims Inc., now Chartis Claims, Inc. was the Carrier.
4. The Industrial Commission has jurisdiction of this matter.
5. On or about April 14, 2008, Plaintiff sustained a compensable work-related injury involving multiple body parts.
6. Defendants accepted the claim as compensable and have paid temporary total disability benefits from April 17, 2008 and continuing.
7. Defendants have paid Plaintiff three different amounts of temporary total disability. From April 17, 2008 to March 19, 2009, Defendants paid Plaintiff $566.69. From March 20, 2009 to August 13, 2009, Defendants paid Plaintiff $562.08. From August 14, 2009 to the present, Defendants paid Plaintiff $582.08. Plaintiff contends as of May 27, 2010, there has been an underpayment of $3,785.11.
8. At the hearing, the parties stipulated to an average weekly wage of $905.00, yielding a maximum compensation rate of $603.64.
9. The parties stipulated to the admissibility of the following documents, which were received into evidence before the Deputy Commissioner:
 • Exhibit 1: Pre-Trial Agreement; and
 • Exhibit 2: Plaintiff's Medical Records, Industrial Commission Forms and Filings and Discovery Responses (668 pages).
 *********** *Page 3 
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 47 years old. Plaintiff had graduated from high school and completed two years of community college to become qualified to work as a medical assistant. Plaintiff had also obtained a Commercial Driver's License (CDL).
2. Defendant-Employer hired Plaintiff and her husband to work as long distance tractor-trailer drivers. Plaintiff's duties included assisting in driving the tractor-trailer for 10 to 12 hours per day to California and back.
3. On or about April 14, 2008, Plaintiff was injured when the tractor-trailer, which her husband was driving, overturned due to high winds. At the time of accident, Plaintiff was climbing from the rear cab sleeper to the front of the cab in order to fasten her seatbelt because of the windy conditions. Before Plaintiff was able to secure her seatbelt, the tractor-trailer was blown on its side and Plaintiff was thrown about the cab, hitting her head against the windshield, her bottom against the window, and her back against the bar between the passenger's window and the windshield. Plaintiff estimated that the tractor-trailer was travelling more than 55 miles per hour and slid for approximately 500 feet on its side.
4. Plaintiff was taken from the scene of the accident by ambulance to Mountain West Medical Center in Tooele, Utah, where she was treated with narcotic pain medications, diagnosed with acute myofacial strain and acute contusions, and instructed to follow-up for treatment.
5. On April 18, 2008, Plaintiff returned home to Virginia in severe pain and presented to the emergency department at Bluefield Regional Medical Center. Emergency room *Page 4 
records note that although Plaintiff was experiencing pain throughout her body, the main concern was spinal pain. In addition, Plaintiff had sustained multiple bruises on her lower legs, her left shoulder and upper arm, with mild bruising along her abdomen, tenderness in the left eye area, and significant tenderness to palpitation to the bilateral ribs.
6. On May 8, 2008, Plaintiff presented to Dr. Gary R. Simonds, a neurosurgeon with Carilion Neurosurgical Care, with complaints of pain from her head to her coccyx, which had not improved over time. Dr. Simonds noted that Plaintiff's range of motion in her back and neck was limited; she was very tender in the coccygeal region; was unable to sit straight; and her gait was antalgic. Dr. Simonds diagnosed Plaintiff with an injury akin to diffuse whiplash, involving multiple muscle groups, ligaments and tendons and a coccygeal injury. Dr. Simonds did not opine that Plaintiff would benefit from neurosurgery.
7. Dr. Simonds restricted Plaintiff from work indefinitely and recommended physical therapy three times a week for two months. Dr. Simonds referred Plaintiff to Dr. Ralph Brown, Jr., a physical medicine and rehabilitation specialist, with Carilion New River Valley Medical Center.
8. On July 15, 2008, Plaintiff presented to Dr. Brown with complaints of numbness, headaches, blood from the kidneys, inability to void and bowel accidents immediately after the tractor-trailer accident on April 14, 2008, and now loss of control of bowels with frequent bowel movements day and night.
9. Dr. Brown is board certified in physical medicine and rehabilitation with subspecialty certifications in spinal cord injuries, electrodiagnostic medicine and pain medicine. Dr. Brown is also the Director of the Carilion Rehabilitation Center, which is the largest *Page 5 
comprehensive outpatient rehabilitation facility in southwest Virginia. Defendants authorized Dr. Brown as Plaintiff's treating physician.
10. Dr. Brown diagnosed Plaintiff with a mild spinal cord injury, neurogenic bladder (a dysfunction related to the central nervous system), neurogenic bowel, dystonia (neurological movement disorder), sexual dysfunction, likely acute dislocation of the coccyx and depression or dysthimia. Dr. Brown opined during his deposition that as a result of the tractor-trailer accident on April 14, 2008, Plaintiff sustained a mild spinal cord injury and as a result, developed autonomic dysreflexia, a neurogenic bladder and neurogenic sexual dysfunction. Plaintiff had not experienced these symptoms prior to the April 14, 2008 accident.
11. Although a spinal cord injury did not appear on an MRI, Dr. Brown noted that a spinal cord injury can exist without radiographic abnormality. This was traditionally thought to have occurred in children under the age of 12; however, it has been documented in adults. Dr. Brown opined that Plaintiff was totally disabled and not at maximum medical improvement.
12. On October 14, 2008, upon referral from Dr. Brown, Plaintiff presented to Dr. David Kagey, a board certified urologist with Urology Associates Ltd., with complaints of lower back and buttock pain. Dr. Kagey was concerned that Plaintiff had a neurogenic bladder and bowel, and he referred her for urodynamic studies and a renal ultrasound. The studies indicated that Plaintiff did not develop any pressure or desire to void. In an effort to preserve her kidney function, Dr. Kagey recommended a self catheterization program to keep Plaintiff's bladder volume and pressure low.
13. Plaintiff continues to present to Dr. Kagey for her urological problems, including periodic ultrasounds and urodynamic and kidney function tests to determine how Plaintiff is managing with catheterization. *Page 6 
14. Throughout this time, Plaintiff regularly presented to Dr. Brown with headaches, pain in her neck, buttocks, lower back and bilateral leg and arm pain. Plaintiff described her pain as severe, continuous, throbbing and burning, with tingling and numbness. Plaintiff also indicated that she was frequently very sad and tearful and continued to have bladder and bowel problems. As Plaintiff's blood pressure was also elevated, Dr. Brown asked her to keep a careful log of her blood pressure, headaches, bowel movements, and mood.
15. On April 6, 2009, Plaintiff was admitted to Saint Albans Behavioral Unit, where she was diagnosed with depressive disorder.
16. On May 14, 2009, Dr. Brown diagnosed Plaintiff with autonomic dysreflexia, which he opined may be related to her bowel problems. Autonomic dysreflexia is a disorder where the autonomic nervous system is not regulated. Symptoms can include tachycardia, sudden high blood pressure, pounding headache, nasal flushing and pain. The autonomic nervous system is the body's involuntary nervous system that controls many bodily functions such as bowel and digestion. As the medical testimony revealed, if not controlled, autonomic dysreflexia can cause stroke, cardiovascular collapse, or even death. Dr. Brown opined that Plaintiff's autonomic dysreflexia was related to the spinal cord injury, which he opined she had experienced as a result of the April 14, 2008 tractor-trailer accident.
17. On June 5, 2009, Plaintiff presented to Dr. Max Cohen, an orthopedic surgeon, for a one-time evaluation. Defendants provided Dr. Cohen with some of Plaintiff's medical records but not the notes of Plaintiff's October 14, 2008, October 30, 2008, January 30, 2009 and March 16, 2009, visits with Dr. Kagey or her urodynamic test results of October 30, 2008. Dr Cohen examined Plaintiff for approximately 15 minutes. *Page 7 
18. Dr. Cohen opined at his deposition that Plaintiff had urinary incontinence and possibly a neurogenic bladder and recommended further neurological studies to determine the possible causes of Plaintiff's symptoms. Dr. Cohen opined that Plaintiff had a neurogenic bowel. In addition, Dr. Cohen opined that Plaintiff may have autonomic dysreflexia, which would explain her bowel and bladder dysfunction.
19. As a result of the tractor-trailer accident, Dr. Cohen opined that Plaintiff experienced an aggravation of a preexisting condition to Plaintiff's spine at the L5-S1 level, for which he testified Plaintiff has "a three percent (3%) PPI rating for persistent cervical pain" and "a three percent PPI rating for her lumbar spine."
20. Although Dr. Cohen opined that Plaintiff would be able to work at a light physical demand category, he recommended a Functional Capacity Evaluation (FCE) to more accurately determine Plaintiff's work restrictions.
21. On September 16, 2009, Plaintiff's treating physician, Dr. Brown, performed electrodiagnostic EMG testing, which revealed that Plaintiff had multiple levels of problems in her neck that were beyond what the MRI would have suggested. Dr. Brown related Plaintiff's nerve damage to her spinal cord injury from the April 14, 2008 tractor-trailer accident.
22. On October 12, 2009, Wendy Lucas, a physical therapist, performed an FCE on Plaintiff. As Plaintiff's pain scores were high and her range of motion was abnormal, the FCE results were considered to be invalid. Ms. Lucas testified that any inconsistencies in the testing could be related to the level of pain that Plaintiff was experiencing during the test. Nonetheless, the FCE report indicated that Plaintiff qualified for sedentary to light physical demand labor. Ms. Lucas determined this level to be consistent with Plaintiff's pre-injury long distance tractor-trailer driver position, with the exception that Plaintiff did not meet the twisting criteria for her *Page 8 
former position. For the FCE, Ms. Lucas had reviewed a job description provided by Defendant-Employer, but it did not contain a Department of Transportation job code to classify the position according to The Dictionary of Occupational Titles.
23. Ms. Lucas testified that The Dictionary of OccupationalTitles is a recognized standard for the preparation of written job descriptions and, unless there is a specific job analysis, it is used to assess suitability. According to this source, a tractor-trailer truck driver position is considered to be a medium strength job. Ms. Lucas testified that the results of the FCE did not indicate that Plaintiff was able to perform at a medium strength capacity.
24. After reviewing the FCE report, Dr. Cohen opined that Plaintiff could return to full duty with Defendant-Employer. However, as Dr. Cohen testified, he was assuming that he was releasing Plaintiff to a sedentary, light job. Dr. Cohen relied on the results of the FCE report, as he had no independent knowledge of the level of Plaintiff's work as a long distance tractor-trailer driver. Dr. Cohen did not believe Plaintiff was malingering or intentionally exaggerating her symptoms. Seemingly contrary, Dr. Cohen noted that Plaintiff was experiencing hypertension and opined that a person with uncontrolled high blood pressure should not be driving a tractor-trailer.
25. After receiving Dr. Cohen's report and the results of the FCE, on November 6, 2009, Defendants filed a Form 24 Application toTerminate or Suspend Payment of Compensation with the North Carolina Industrial Commission.
26. On December 2, 2009, Special Deputy Commissioner Emily M. Baucom disapproved the Form 24 Application. *Page 9 
27. On December 18, 2009, Defendants filed a Form 33 RequestThat Claim Be Assigned for Hearing, appealing the Order of the Special Deputy Commissioner and contending that Plaintiff was no longer disabled.
28. With regard to the medical testimony, the Full Commission gives greater weight to the opinions of Dr. Brown than those of Dr. Cohen. Dr. Brown has treated Plaintiff since shortly after her accident in 2008, and therefore is more familiar with her condition. In addition, he is board certified in physical medicine and rehabilitation with subspecialty certifications in spinal cord injuries, electrodiagnostic medicine and pain medicine. Dr. Cohen, although he is an orthopedic surgeon, is not as experienced in spinal cord injuries and only examined Plaintiff on one occasion.
29. Based on the preponderance of the evidence of the record, the Full Commission finds that Plaintiff's symptoms, including a mild spinal cord injury, autonomic dysreflexia, neurogenic bladder, neurogenic bowel, and neurogenic sexual dysfunction are related to the tractor-trailer accident occurring on or about April 14, 2008. In addition, Plaintiff's pre-existing spinal condition at L5-S1 was aggravated as a result of the April 14, 2008 accident. The Full Commission further finds that Dr. Brown opined that Plaintiff's prognosis would be fair for continued improvement.
30. With regard to Plaintiff's ability to return to work, Dr. Brown opined that Plaintiff continues to be totally disabled because of her dysreflexia, which is not controlled. Dr. Brown opined that the autonomic dysreflexia was caused by the tractor-trailer accident on April 14, 2008. Autonomic dysreflexia means an over-activity of the autonomic nervous system, often related to a spinal cord injury. It can occur when an irritating stimulus is introduced to the body below the level of spinal cord injury, such as an overfull bladder. Since the impulses cannot *Page 10 
reach the brain, this results in spasms and a narrowing of the blood vessels, which causes a rise in blood pressure. Due to a spinal cord lesion, the blood pressure cannot be regulated and can result in a stroke or even death, if left uncontrolled. Dr. Brown testified that when Plaintiff experiences a dysreflexic headache, caused by an elevation in blood pressure, she cannot work as the pain is so severe.
31. On the issue of disability, Dr. Cohen opined that a person with uncontrolled high blood pressure should not be driving a tractor-trailer coast to coast.
32. Based on the preponderance of the evidence of the record, the Full Commission finds that Plaintiff was unable to earn the same or greater wages as she was earning in the same or any other employment from April 14, 2008 and continuing.
33. Based on the preponderance of the evidence of the record, the Full Commission finds that the treatment Plaintiff has received from Drs. Brown and Kagey has been reasonable, necessary and intended to effect a cure, give relief and lessen the period of Plaintiff's disability.
34. At the hearing, the parties stipulated to an average weekly wage of $905.00, yielding an average weekly wage of $603.64. Defendants paid Plaintiff at an average weekly wage of $566.69 from April 17, 2008 to March 19, 2009; at the rate of $562.08 from March 20, 2009 to August 13, 2009 and at the rate of $582.08 from August 14, 2009 and continuing. As the rate to which the parties stipulated at the hearing is higher than the rate at which temporary total disability benefits were paid, this has resulted in an underpayment of compensation to Plaintiff.
35. The Full Commission finds that the preponderance of the medical evidence indicates that Plaintiff has not yet reached maximum medical improvement. *Page 11 
36. The Full Commission finds that Plaintiff failed to show sufficient good ground in support of his Motion for a Ten Percent (10%) penalty or sanctions.
 ***********
Based upon the foregoing Stipulations, and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On or about April 14, 2008, Plaintiff sustained an admittedly compensable injury by accident to her spine, arising out of and in the course of her employment with Defendant-Employer. As a result of her injury by accident on or about April 14, 2008, Plaintiff experienced a mild spinal cord injury, which resulted in autonomic dysreflexia, a neurogenic bladder, a neurogenic bowel and sexual dysfunction. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of Plaintiff's compensable injury by accident on or about April 14, 2008, Plaintiff has been unable to earn the same or greater wages as she was earning in the same or any other employment. As a result, Plaintiff is entitled to receive ongoing temporary total disability compensation at the rate of $603.64 per week from April 14, 2008, continuing until further Order of the Industrial Commission. As there has been an underpayment of indemnity compensation, Plaintiff is entitled to the difference of the amounts paid and the stipulated compensation rate of $603.64 since April 14, 2008. N.C. Gen. Stat. § 97-29.
3. As a direct and proximate result of Plaintiff's compensable injuries by accident on or about April 14, 2008, Plaintiff is entitled to all medical expenses incurred or to be incurred for her back, including a mild spinal cord injury, which resulted in autonomic dysreflexia, a neurogenic bladder, a neurogenic bowel and sexual dysfunction for so long as such *Page 12 
examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen Plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Plaintiff is not entitled to a ten percent (10%) penalty and sanctions for payments made by Defendants at an incorrect average weekly wage based upon the circumstances of this case. N.C. Gen. Stat. § 97-18(g) and Rule 802 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
5. Plaintiff's legal counsel has provided valuable legal services and a reasonable attorney's fee should be approved. N.C. Gen. Stat. § 97-90.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee hereinafter approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $603.64 per week commencing April 14, 2008 and continuing until further Order of the Industrial Commission, subject to a credit for temporary total disability benefits previously paid for this period.
2. Defendants shall pay all past and future medical expenses, as recommended by her treating physicians, incurred or to be incurred as a result of Plaintiff's compensable injury by accident to her spine, including a mild spinal cord injury, which resulted in autonomic dysreflexia, a neurogenic bladder, a neurogenic bowel and sexual dysfunction, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen Plaintiff's period of disability. *Page 13 
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due Plaintiff under Paragraph One of this Award is approved for Plaintiff's counsel and shall be paid by Defendants as follows: twenty-five percent of any compensation which has accrued shall be paid directly to Plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to Plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ day of August 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1